UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

SHAYNE MICHAEL FELL,
     Plaintiff,

v.                                Case No.: 3:22cv17824/MCR/ZCB

NOLAN WEEKS,
     Defendant.
_____/

## **REPORT AND RECOMMENDATION**

This is a *pro se* civil rights case filed under 42 U.S.C. § 1983.

Plaintiff is a pretrial detainee at Okaloosa County Jail, and Defendant

Weeks is the Chief Corrections Director at the Okaloosa County Jail.

Currently before the Court is Defendant's motion to dismiss.  (Doc. 43).

Plaintiff has responded in opposition. (Doc. 51).  For the reasons below,

Defendant's motion should be granted in part and denied in part.

## I.    Summary of Plaintiff's Factual Allegations[1]

Plaintiff has sued Defendant Weeks in both his individual and official capacities. (Doc. 25 at 2). Plaintiff alleges that on September 30, 2013, he was booked into the Okaloosa County Jail. (*Id.* at 5). Upon being processed, Plaintiff was charged a $30 subsistence fee under Florida Statute § 951.033. (*Id.*). Because Plaintiff could not pay the $30 fee, a lien was placed on his account in accordance with the statute. (*Id.*). Plaintiff was subsequently released, but the $30 lien remained on his account. (*Id.*).

Seven years later, on August 12, 2020, Plaintiff was arrested again and booked into the Okaloosa County Jail. (*Id.*). Plaintiff alleges that while being processed on this arrest, the jail improperly collected $30 from him to satisfy the 2013 lien. (*Id.*). After satisfying that lien, the jail assessed another $30 fee for his new booking. (*Id.*). Because Plaintiff had just paid $30 for his 2013 booking, he was unable to afford the $30 fee for his 2020 booking. (*Id.*). Thus, a partial lien was placed on his account for his 2020 booking. (*Id.*).

---

[1] The Court assumes the allegations in the complaint are true. *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty.*, 48 F.4th 1222, 1229 (11th Cir. 2022).

Plaintiff then filed a grievance with the jail on August 3, 2022.  In the grievance, Plaintiff argued that the Florida Model Jail Standard and Florida Statute § 951.033(6) dictated that the $30 lien from 2013 should have expired after three years.  (*Id.* at 5-6).  Plaintiff, therefore, requested a refund of $30.  (*Id.* at 6).  Plaintiff's grievance was denied, and Plaintiff was told that his accumulation of debt was not a lien and "statute 951.033(6) does not apply."  (*Id.*).  Plaintiff appealed.  (*Id.*).  In his appeal, Plaintiff argued that he was being denied equal protection because a fellow inmate allegedly grieved the same issue and was provided with a refund.  (*Id.*).  Plaintiff's appeal was denied.  (*Id.*).  Plaintiff appealed again, and on August 29, 2022 Defendant denied Plaintiff's final appeal.  (*Id.*).

Plaintiff further alleges that around October 2021, the Okaloosa County Jail implemented a policy requiring the use of electronic tablets to file grievances.  (*Id.* at 7).  Plaintiff claims that on January 5, 2023, Defendant ordered Plaintiff's electronic tablet taken away from him as a "disciplinary action."  (*Id.*).  Plaintiff claims he received no disciplinary reports and alleges Defendant's decision to take away his tablet was retaliation for Plaintiff's use of the grievance system and the initiation of

this lawsuit.  (*Id.*).

Next, Plaintiff alleges that on January 31, 2023, Defendant instituted a new policy requiring that all books, magazines, and newspapers be accessed via tablet.  (*Id.* at 8).  Plaintiff's paper books, including his Bible, were subsequently confiscated.  (*Id.*).  Because Plaintiff's tablet had been taken away, he claims that as a result of the new policy he now has no access to the Bible.  (*Id.*).

Plaintiff brings two claims against Defendant.  (*Id.* at 9).  First, Plaintiff claims Defendant violated the Equal Protection Clause of the Fourteenth Amendment when he refused to refund Plaintiff $30 but refunded $30 to another similarly situated inmate.  Second, Plaintiff alleges Defendant violated the First Amendment, the Religious Land Use and Institutionalized Persons Act (RLUIPA), and Florida Statute § 761.03 when he denied Plaintiff access to the Bible.  (*Id.*).  Plaintiff further claims Defendant violated the First Amendment by retaliating against him for filing grievances.  (*Id.*).  Plaintiff seeks declaratory, injunctive, and monetary relief.  (*Id.*).

## II.   Motion to Dismiss Standard

Defendant has moved to dismiss under Rule 12(b)(6) of the Federal

Rules of Civil Procedure.  To survive dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  The plausibility standard is met only where the facts alleged enable "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

At the motion to dismiss stage, the plaintiff's allegations are taken as true and construed in the light most favorable to the plaintiff.  *Chabad Chayil, Inc.*, 48 F.4th at 1229.  Additionally, a *pro se* litigant's complaint must be liberally construed.  *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006).

## III.    Discussion

Defendant moves to dismiss Plaintiff's amended complaint on several grounds.  Defendant argues: (1) Plaintiff fails to state a plausible

Fourteenth Amendment equal protection claim (Doc. 43 at 5-9); (2) Plaintiff fails to state a plausible First Amendment retaliation claim (*id.* at 9-12); (3) Plaintiff fails to state a plausible First Amendment free exercise claim (*id.* at 13-14); (4) qualified immunity bars Plaintiff's claims against Defendant in his individual capacity (*id.* at 15-16); and (5) Plaintiff fails to state a plausible claim against Defendant in his official capacity (*id.* at 16-19).  Defendant's arguments are addressed below.

### A. Plaintiff has stated a plausible "class of one" equal protection claim.

Defendant argues Plaintiff has failed to state an equal protection claim because Plaintiff has neither identified a similarly situated comparator nor plausibly alleged discriminatory intent.  (Doc. 43 at 5-9).

The Court will first address the similarly situated comparator argument.   Under the Equal Protection Clause of the Fourteenth Amendment, government actors must treat similarly situated people alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). The Supreme Court has "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of*

*Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also PBT Real Est., LLC v. Town of Palm Beach*, 988 F.3d 1274, 1285 (11th Cir. 2021) (explaining that to prevail on a class of one claim, a plaintiff must show he or she "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment"). To satisfy the similarly situated requirement, a "plaintiff must ultimately show that [he] and any comparators are similarly situated in light of all the factors that would be relevant to an objectively reasonable governmental decisionmaker." *PBT Real Est., LLC*, 988 F.3d at 1285 (cleaned up).

Accepting Plaintiff's allegations as true and liberally construing them as the Court is required to do at this point, Plaintiff has plausibly alleged a similarly situated comparator who was treated differently. Plaintiff has submitted an affidavit from an individual, Joseph Cain Johnson, who Plaintiff alleges is a similarly situated comparator.[2] (Doc.

---

[2] "In deciding whether a complaint states a claim upon which relief may be granted, we normally consider all documents that are attached to the complaint or incorporated into it by reference." *Gill ex rel K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019). Here, Plaintiff referenced an "Exhibit B" in his complaint but did not attach it to his complaint. (Doc. 25 at 6). The Court subsequently permitted Plaintiff to include as an exhibit to his response to Defendant's motion to dismiss the "Exhibit B" that was

51 at 26). Mr. Johnson's affidavit claims that he was booked into the Okaloosa County Jail in 2016, and at that time he was assessed a $30 subsistence fee. (*Id*.). Mr. Johnson was released without paying the $30 fee. (*Id*.). In 2021, Mr. Johnson was again booked into the Okaloosa County Jail. (*Id*.). At that time, the unpaid $30 fee from his 2016 booking was listed as a debt on his account. (*Id*.). And the jail added a second $30 subsistence fee to his account for the 2021 booking. (*Id*.). Mr. Johnson subsequently paid the $60. (*Id*.).

After researching Florida Statute § 951.033(6), Mr. Johnson says he submitted a grievance to jail officials arguing that the $30 lien from his 2016 booking should have been voided after three years. (*Id*.). Mr. Johnson requested a refund of the $30 fee from 2016 because it was paid after expiration of the three-year period referenced in the statute. (*Id*.). According to Mr. Johnson, his grievance was initially denied by jail officials. (*Id*.). Mr. Johnson appealed to Defendant who approved his appeal and returned the $30. (*Id*.). Additionally, Defendant reportedly told Mr. Johnson that his interpretation of the three-year limitation in

---

referenced in his complaint but not attached to it. (Doc. 49). Exhibit B is Joseph Cain Johnson's affidavit. The Court also provided Defendant an opportunity to respond to Exhibit B. (Docs. 52, 53).

the statute was correct.   (*Id.*).   Mr. Johnson ends his affidavit with the following statement: "I submit that my situation was no different than Plaintiff Shayne Fell's and there is no justifiable reason for the difference in treatment regarding his instant complaint." (*Id.*).

Based on the information currently before the Court, Mr. Johnson and Plaintiff's situation seem to be nearly identical.  Like Mr. Johnson, Plaintiff was booked in the Okaloosa County Jail, and he was assessed a $30 subsistence fee.  Because he could not pay the $30 fee, Plaintiff—like Mr. Johnson—had a lien placed against his account.  More than three years later, Plaintiff—like Mr. Johnson—was re-booked into the jail.  And at that time, Plaintiff—like Mr. Johnson—was assessed an additional $30 subsistence fee, which was added to the prior $30 fee for a total indebtedness of $60.  Plaintiff then alleges that he—again, like Mr. Johnson—challenged the $30 lien from the prior arrest, arguing that it should have expired after three years under Florida Statute § 951.033(6). Plaintiff claims that his challenge was denied by Defendant, the $30 lien remained, and he was told Florida Statute § 951.033(6) was not applicable, whereas Mr. Johnson says his challenge was successful, and

he was told that his interpretation of Florida Statute § 951.033(6) was correct.

As the foregoing discussion reveals, Plaintiff and Mr. Johnson are "*prima facie* identical in all relevant respects."[3] *PBT Real Est., LLC*, 988 F.3d at 1285. Plaintiff has not simply "rel[ied] on broad generalities in identifying a comparator," *Leib v. Hillsborough Cnty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1307 (11th Cir. 2009), but has instead sufficiently identified an individual who was in a very similar situation yet allegedly received different treatment. Defendant's arguments to the contrary are not persuasive.[4]

---

[3] The Court would note that the governmental decision in this case was relatively simple—it involved resolving a single issue based on the application of one statute. And, according to the Eleventh Circuit "where the challenged governmental decision is simple or one-dimensional—for example, where the decision involves the application of a single criterion to a single issue—making out a 'class of one claim' is generally easier than in cases where governmental action is multi-dimensional, involving varied decisionmaking criteria applied in a series of discretionary decisions made over an extended period of time." *Leib*, 558 F.3d at 1307 (cleaned up).

[4] Defendant argues Plaintiff has failed to establish a similarly situated comparator because Plaintiff has not shown that a "civil lien" existed against Mr. Johnson. (Doc. 53). In Defendant's view, Plaintiff had a "civil lien" under Florida Statute § 951.033(6) but Mr. Johnson owed a "debt" to the county under Fla. Stat. § 951.033(5)(a). (*Id.* at 3-4). And this, Defendant argues, means Plaintiff and Mr. Johnson are not similarly situated. Mr. Johnson's affidavit, however, indicates that he did have a

Defendant next argues that Plaintiff has failed to plausibly allege that Defendant acted intentionally. More specifically, Defendant says that Plaintiff's complaint contains an insufficient and conclusory statement that Defendant's conduct was intentional. The Court disagrees. Plaintiff's complaint alleges that Defendant "intentionally violated [Plaintiff's] rights to equal protection," and it supports that allegation with information regarding how Defendant was "given notice that he personally treated another similarly situated inmate differently by approving that inmate's same aggrieved issue made pursuant to § 951.033(6) resulting in a $30 refund . . . ." (Doc. 25 at 6). Yet despite

---

civil lien against him, and he specifically stated that he gained relief from that lien based on Florida Statute § 951.033(6)—the same statutory section relied on by Plaintiff. Indeed, Mr. Johnson's affidavit says nothing about Florida Statute § 951.033(5)(a)—the statutory section Defendant appears to argue Mr. Johnson was proceeding under. The affidavit from Mr. Johnson specifically states "I submitted a grievance arguing that the $30 *lien* created against my account should have been void after three years pursuant to *§ 951.033(6)*." (Doc. 51 at 26) (emphasis added). And according to Mr. Johnson, when his grievance denial was reversed on appeal, the appeal stated Mr. Johnson's account was "refunded $30 per *Fla. Stat. 951.033(6)*." (*Id.*) (emphasis added). Mr. Johnson also states that Defendant told him his interpretation of § 951.033(6) was correct, and officials appreciated the "opportunity to correct the issue." (*Id.*). Thus, when the allegations are accepted as true and liberally construed in favor of Plaintiff, he has plausibly alleged that Mr. Johnson was similarly situated.

being provided with that information, Plaintiff claims Defendant proceeded to do the exact opposite by denying his grievance and refusing to grant him a refund of $30 without any rational basis for the differential treatment. (*Id*). Plaintiff's complaint, when liberally construed and accepted as true, has plausibly alleged that "he was intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Bumpus v. Watts*, 448 F. App'x 3, 5 (11th Cir. 2011) (cleaned up). Thus, the Court should deny Defendant's motion to dismiss Plaintiff's equal protection claim.

### B. Plaintiff has stated a plausible First Amendment free exercise of religion claim.

Plaintiff claims that Defendant violated the First Amendment's Free Exercise Clause by enacting a policy that replaced all paper books, including the Bible, with electronic reading tablets, and then taking away Plaintiff's tablet such that he could no longer read the Bible. (Doc. 25 at 7-8). Defendant argues that Plaintiff's claim should be dismissed. (Doc. 43 at 13-14).

"To state a claim under the First Amendment's Free Exercise Clause, a plaintiff must plead facts showing a 'substantial burden' on a sincerely held religious belief." *Robbins v. Robertson*, 782 F. App'x 794,

801 (11th Cir. 2019). A "substantial burden" is "more than an incidental effect or inconvenience on religious exercise." *Id.* It "is akin to significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly." *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004). An action or policy can substantially burden a prisoner's religious exercise "if it forces him to choose between engaging in conduct that seriously violates his religious beliefs or facing a serious penalty." *Robbins*, 782 F. App'x at 801 (citing *Holt v. Hobbs*, 574 U.S. 352 (2015)).

Defendant argues Plaintiff's First Amendment claim must be dismissed because Plaintiff "fails to allege how lacking access to a Bible or other reading materials substantially burdened the exercise of his religious beliefs." (Doc. 43 at 14). Here, Plaintiff has alleged that Defendant instituted a policy on January 31, 2023 prohibiting the possession of physical copies of "all books, magazines, and newspapers." (Doc. 25 at 8). Under this policy, the Bible and other reading materials were only available via tablet. (*Id.*). And because Plaintiff's tablet has been confiscated with "no tentative return", "the Bible . . . [is] not available to the Plaintiff." (*Id.*). Plaintiff claims that as a result of his

13

tablet being confiscated and the prohibition on reading materials in formats other than the tablet has left him with the choice of possessing a contraband Bible and risking disciplinary action or being forced to give up his daily Bible devotions and religious exercises.  (*Id.*).

It is well settled that denying a prisoner access to fundamental aspects of his or her religious worship—such as a primary religious text—may substantially burden a sincerely held religious belief.[5]  *See, e.g.,*

---

[5] Prison officials may impose limitations on an inmate's exercise of religion if the limitations are "reasonably related to legitimate penological interests." *Rodriguez v. Burnside*, 38 F.4th 1324, 1330 (11th Cir. 2022) (cleaned up).  When deciding if a limitation is reasonably related to legitimate penological interests, courts consider four factors: "(1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether alternative means of exercising the right remain open to prison inmates, such that they may freely observe a number of their religious obligations; (3) what impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether any obvious easy alternatives to the current regulation exist, which would suggest that the policy is an exaggerated response to prison concerns." *Id.* (cleaned up) (citing *Turner v. Safley*, 482 U.S. 78 (1987)).  In this case, Defendant's motion to dismiss does not argue that the limitations about which Plaintiff complains are reasonably related to legitimate penological interests.  Nor are the legitimate penological interests apparent from the face of the complaint.  Defendant's motion does not discuss the *Turner* factors or explain how they should be analyzed here.  Accordingly, at this point in the proceedings the Court "cannot evaluate whether the alleged restrictions on [Plaintiff's] religious practice were reasonable in light of the four *Turner* factors." *Johnson v. Brown*, 581 F.

*Johnson v. Brown*, 581 F. App'x 777, 780-81 (11th Cir. 2014) (finding that prisoner stated a plausible First Amendment claim based on prison officials denying access to a prayer room); *Garner v. Muenchow*, 715 F. App'x 533, 536 (7th Cir. 2017) ("[D]enying prisoners access to their holy text . . . is a substantial burden on free-exercise rights."); *Sutton v. Rasheed*, 323 F.3d 236, 253-57 (3d Cir. 2003) ("[W]hile we believe that a Christian inmate could practice his religion generally even if prevented from attending Christmas or Easter services, we do not believe he could practice his religion if deprived of access to the Bible."); *Blakenship v. Setzer*, 681 F. App'x 274, 277 (4th Cir. 2017) (holding 10-day deprivation of Bible substantially burdened inmate's religion).    Thus, Plaintiff's allegation that Defendant has denied him access to the Bible is sufficient to plausibly allege a First Amendment free exercise claim.[6] *See Lawrence*

---

App'x 777, 781 (11th Cir. 2014) (reversing dismissal of prisoner's First Amendment free exercise claim and determining that the prisoner's complaint, "construed liberally and in the light most favorable" to the prisoner "alleged that prison officials infringed his practice of his [religion]," and "we cannot say that this is a case in which the prison officials' legitimate penological interests are apparent from the face of the complaint").

[6] Plaintiff's complaint also alleges violations of RLUIPA and Florida Statute § 761.03 (Doc. 25 at 9).  Defendant's motion does not address either of those statutes or explain why Plaintiff's claims under them should be dismissed.  The Court, therefore, will not address RLUIPA or

*v. Pecore*, No. 3:20-cv-00055, 2021 WL 12188474, at \*5 (M.D. Ga. Feb. 4, 2021) (finding that prisoner stated a plausible First Amendment claim where he alleged prison officials "completely denied access to his religious texts").

## C. Plaintiff has stated a plausible retaliation claim.

Next, the Court will consider Defendant's motion to dismiss Plaintiff's claim that Defendant retaliated against him in violation of the First Amendment. The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech. *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003) (citations omitted). To prevail on a retaliation claim, an inmate must establish these elements: (1) his speech was constitutionally protected; (2) the defendant's retaliatory conduct adversely affected the protected speech; and (3) there is a causal relationship between the retaliatory action and the protected speech. *Douglas v. Yates*, 535 F.3d 1316, 1321 (11th Cir.

---

Florida Statute § 761.03 except to say that Plaintiff's allegations are sufficient to state a plausible claim under RLUIPA and Florida Statute § 761.03. *See United States v. Campbell.*, 26 F.4th 860, 872 (11th Cir. 2022) ("Under the party presentation principle, American courts function in an adversarial system of adjudication whereby we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.") (cleaned up).

2008). A prisoner's filing of a grievance concerning the conditions of his imprisonment is protected speech under the First Amendment. *See id.* at 1321. And the Eleventh Circuit has specifically recognized that "First Amendment rights to free speech and to petition the government for a redress of grievances are violated when a prisoner is punished for filing a grievance concerning the conditions of his imprisonment." *Boxer X v. Harris*, 437 F.3d 1107, 1112 (11th Cir. 2006).

Looking to Plaintiff's complaint, Plaintiff alleges that inmates within the Okaloosa County Jail were provided electronic tablets for filing inmate grievances. (Doc. 25 at 7). Inmate grievances were to be submitted electronically instead of on paper forms. (*Id.*). On September 14, 2022, Plaintiff initiated this action against Defendant. (*Id.*). Approximately four months later, Defendant ordered the confiscation of Plaintiff's electronic tablet as a "disciplinary action." (*Id.*). When Plaintiff asked why his tablet was confiscated, Defendant told Plaintiff it was taken because Plaintiff had submitted "obscene and vulgar grievances" using the tablet. (*Id.*). Plaintiff alleges that his grievances were not inappropriate, and that Defendant actually confiscated his

17

tablet in retaliation for filing grievances and commencing this lawsuit. (*Id.*).

Defendant argues Plaintiff admits that his tablet was taken for "unsavory language toward Jail staff via his inmate grievances." (Doc. 43 at 11). Defendant argues this unsavory language is not protected speech. Therefore, Defendant concludes, Plaintiff's retaliation claim must fail. (*Id.* at 11-12). Plaintiff, however, alleges that while he was told his tablet was taken away because of vulgar and obscene language in his grievances, he claims that the real reason it was taken away was in retaliation for filing grievances and this lawsuit. (*See* Doc. 25 at 7) ("The Plaintiff avers that his grievances were not inappropriate and his tablet was not taken as a disciplinary action, just simply in retaliation for using the grievance process as required before filing the instant complaint.").

For purposes of ruling on the motion to dismiss, the Court is required to assume Plaintiff's allegations are true and to liberally construe the complaint in his favor. That must be done "even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 556 (2007) (cleaned up).   Thus, the Court assumes that Plaintiff's grievances were not inappropriate and/or vulgar and that his tablet was not taken away as a disciplinary action.   Because Plaintiff has plausibly alleged that Defendant retaliated against him for filing grievances, and the "First Amendment forbids prison officials from retaliating against prisoners from exercising the right of free speech," *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003), Defendant's motion to dismiss the retaliation claim lacks merit.

## D. Defendant is not entitled to dismissal based on qualified immunity.

Defendant has also moved to dismiss based on qualified immunity. "Under the qualified immunity doctrine, government officials performing discretionary functions are immune not just from liability, but from suit, unless the conduct which is the basis for suit violates clearly established federal statutory or constitutional rights of which a reasonable person would have known." *Sanders v. Howze*, 177 F.3d 1245, 1249 (11th Cir. 1999).   To receive qualified immunity, Defendant "must first demonstrate that [he was] engaged in a discretionary duty."[7]   *Mercado v. City of*

---

[7] In this case, it is undisputed that Defendant was engaged in a discretionary duty.   (Doc. 43 at 16).

*Orlando*, 407 F.3d 1152, 1156 (11th Cir. 2005).  If he was, then the burden shifts to Plaintiff to establish that qualified immunity is unwarranted. *Id.*  Meeting that burden requires "satisfying a two-part inquiry."  *Id.* First, Plaintiff's allegations, if true, must establish a violation of a constitutional right. *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010).  Second, that constitutional right must have been clearly established when the incident occurred.  *Id.*  Plaintiff must satisfy both parts, but the "analysis may be done in whatever order is deemed most appropriate for the case."  *Id.*

A right is "clearly established" if controlling law gave the official "fair warning" that his conduct violated a constitutional right.  *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).  Fair warning can be established by: (1) identifying "a materially similar case," *Mercado*, 407 F.3d at 1159; (2) appealing to "a broader, clearly established principle [that] should control the novel facts" at hand, *id.*; or (3) establishing that the challenged conduct "so obviously violates the Constitution that prior case law is unnecessary" to clarify its lawlessness, *Waldron v. Spicher*, 954 F.3d 1297, 1305 (11th Cir. 2020).

Looking first to the violation of a constitutional right prong, for the reasons explained above, Plaintiff's complaint—with the allegations taken as true and liberally construed—has sufficiently alleged that Defendant violated the First and Fourteenth Amendments. And looking to the second prong, the constitutional rights allegedly violated were clearly established. With regard to the First Amendment retaliation claim, the Eleventh Circuit has explained that "as early as 1989" it was clearly established for qualified immunity purposes that "a prisoner's First Amendment free speech rights are violated when prison officials retaliate against him or her for filing a grievance." *Hicks v. Ferrero*, 241 F. App'x 595, 598 (11th Cir. 2007). With regard to the First Amendment free exercise of religion claim, it is clearly established that "refusal to permit a prisoner access to religious publications state[s] a cause of action" under the First Amendment unless such refusal is justified by legitimate penological concerns. *Neal v. Georgia*, 469 F.2d 446, 450 (5th Cir. 1972).[8]    And as for the equal protection claim, it is clearly established that a government official may not intentionally and

---

[8] Decisions of the Fifth Circuit issued prior to September 30, 1981 are binding in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

21

arbitrarily treat similarly situated people differently without a rational basis. *See Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) ("Our cases have recognized successful equal protection claims brought by a 'class of one' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."). Accordingly, Defendant is not entitled to dismissal based on the doctrine of qualified immunity.

### E. Plaintiff has not plausibly alleged an official capacity claim against Defendant.

In addition to his individual capacity claims against Defendant, Plaintiff has also brought an official capacity claim. (Doc. 25 at 2). Defendant has moved to dismiss the official capacity claim. (Doc. 43 at 16-19).

"Where . . . a section 1983 plaintiff sues government employees . . . in their official capacities, the suit is in actuality against the governmental entity that the individuals represent." *Farred v. Hicks*, 915 F.2d 1530, 1532 (11th Cir. 1990). Thus, Plaintiff's official capacity claim against Defendant Weeks is equivalent to a claim against Defendant's governmental employer—here, Okaloosa County. Thus, to state an official capacity claim against Defendant, Plaintiff must allege

facts sufficient to show Okaloosa County's liability for the claimed constitutional violations. *See id.* And to establish that a county is liable under § 1983, a plaintiff must show (1) "his constitutional rights were violated"; (2) the county "had a custom or policy that constituted deliberate indifference to that constitutional right"; and (3) "that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

Plaintiff's complaint identifies a policy that no hard-copy books are allowed in the jail and, instead, books and other reading materials may be accessed via an electronic tablet. (Doc. 25 at 7-8). Plaintiff alleges that because his tablet has been taken away by Defendant pursuant to that policy, he is unable to access the Bible. (*Id.*). Although Plaintiff has plausibly alleged the existence of a policy, he has failed to plausibly allege the required causal connection between the policy and the claimed constitutional violation. The policy itself does not prevent inmates from accessing the Bible, it simply specifies the format in which the Bible may be accessed. Plaintiff's access to the Bible has been allegedly taken away not because of the county's policy, but because of the individual actions

of Defendant.  Thus, Plaintiff has failed to plausibly allege an official capacity claim against Defendant.

## IV.    Conclusion

For the reasons above, it is respectfully **RECOMMENDED** that:

1.    Defendant's motion to dismiss (Doc. 43) be **GRANTED in part** to the extent that Plaintiff's official capacity claim against Defendant be **DISMISSED**.

2.    Defendant's motion to dismiss (Doc. 43) be **DENIED** in all other respects.

3.    This matter be recommitted to the undersigned for further proceedings.

At Pensacola, Florida, this 31st day of July 2024.

/s/ *Zachary C. Bolitho*

Zachary C. Bolitho
United States Magistrate Judge

## Notice to the Parties

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of this Report and Recommendation.  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.  An objecting party must serve a copy of the objections on all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on

unobjected-to factual and legal conclusions.    *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.